# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

WAYNE P.,

                                        Plaintiff,

        v.                                                          8:22-CV-653
                                                                    (ATB)

KILOLO KIJAKAZI,

                                        Defendant.

---

MARK A. SCHNEIDER, ESQ., for Plaintiff
GEOFFREY M. PETERS, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.  (Dkt. Nos. 4, 5).

## I.  PROCEDURAL HISTORY

On March 29, 2019, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2017. (Administrative Transcript ("T.") 64).  Plaintiff's application was denied initially on July 23, 2019 (T. 64), and upon reconsideration on January 28, 2020 (T. 96).  On October 1, 2020, Administrative Law Judge ("ALJ") Andrew J. Soltes, Jr. conducted a hearing during which plaintiff and vocational expert ("VE") Sharon Morra testified.  (T. 33-63).  Plaintiff was represented by non-attorney representative Kayla Hebert during

1

the hearing.  (T. 43).  On November 30, 2020, the ALJ issued an order denying

plaintiff's claim.  (T. 10-22).  This decision became the Commissioner's final decision

when the Appeals Council denied plaintiff's request for review on June 14, 2022.  (T. 1-

3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security

Income benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death, or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that
> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged
> in substantial gainful activity.  If he is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which significantly limits his
> physical or mental ability to do basic work activities.  If the claimant suffers
> such an impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which meets or equals the criteria
> of an impairment listed in Appendix 1 of the regulations.  If the claimant has

2

such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of

the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    FACTS

Plaintiff was thirty-seven years old on the date of the administrative hearing. (T. 41). He lived with his girlfriend, his girlfriend's daughter, and two roommates. (T. 41). He did not have a valid driver license or vehicle, at the time of the hearing. (T. 46-47). One of his roommates drove him to appointments. (T. 47). His highest level of education was the completion of the tenth grade, in special education. (*Id.*).

In 2005, plaintiff worked for a big-box store as a stocker for a little less than a year, and then worked for six months as a seasonal work farmer in 2006. (T. 44-45). Plaintiff had various short-term job placements through staffing agencies from 2006 to 2008 and in 2018. (T. 43-44). In 2018, plaintiff worked at a warehouse for about a week but stopped working because of his "social phobia." (T. 43). Plaintiff testified he is unable to work because he "get[s] paranoid and really nervous around people." (T.

48).  He testified he only leaves the house to go shopping about once a month.  (T. 49-50).

Plaintiff has been seeing a therapist, once every three to four weeks, for approximately one and a half years.  (T. 51-52).  He testified that his condition has stayed "about the same" during treatment, and that he currently takes medication for anxiety and depression.  (*Id.*).  He testified that he uses an inhaler for Chronic Obstructive Pulmonary Disease ("COPD").  (T. 53).  Because of his COPD, plaintiff is out of breath after ten minutes of walking and has trouble lifting objects heavier than fifteen pounds.  (T. 53).  Plaintiff testified that he currently smokes a pack of cigarettes a day.  (T. 54).  He testified that he has no difficulty standing but has limitations sitting because of Attention-Deficit/Hyperactivity Disorder ("ADHD").  (T. 53-54).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 10-22).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ first determined at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since his application date of March 29, 2019.  (T. 12).  Next, the ALJ found that plaintiff has the following severe impairments: chronic obstructive pulmonary disease, attention deficit hyperactivity disorder, persistent depressive disorder, social anxiety disorder, and posttraumatic stress disorder.  (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or

medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part

404, Subpart P.  (*Id.*).

> At step four, the ALJ found that plaintiff had

> [T]he residual functional capacity to perform a full range of work at all
> exertional levels but with the following nonexertional limitations: [plaintiff]
> must avoid concentrated exposure to dust, fumes, gases, and other
> pulmonary irritants; must avoid extreme temperatures; [plaintiff] can
> perform unskilled, low stress occupations, where [sic] are defined as those
> consisting of simple, routine tasks and entailing no more than basic work-
> related decisions; [plaintiff] can occasionally interact with supervisors and
> coworkers, but can never interact with the public; and [plaintiff] can tolerate
> rare changes in the workplace setting.

(T. 15).

In making the RFC determination, the ALJ stated that he considered all of the

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on

the requirements of 20 C.F.R. [§] 416.929" and Social Security Ruling ("SSR") 16-3p.

(*Id.*).  The ALJ further noted that he considered "the medical opinion(s) and prior

administrative medical finding(s)" pursuant to 20 C.F.R. [§] 416.920c.  (*Id.*).  After

considering plaintiff's statements regarding his symptoms, along with the other

evidence of record, the ALJ concluded plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not fully consistent with the

evidence."  (T. 16).  The ALJ then noted that plaintiff has no past relevant work and a

limited education.  (T. 21).  Ultimately, the ALJ then determined there were jobs

existing in significant numbers in the national economy that someone with plaintiff's

age, education, work experience, and residual functional capacity could perform.  (T.

21).  Accordingly, the ALJ ruled that plaintiff was not disabled from the application

date of March 29, 2019, through the date of the ALJ's decision.  (T. 22).

## V.    ISSUES IN CONTENTION

Plaintiff raises four arguments:

1.    The ALJ failed to properly evaluate the medical opinions and "erroneously gave controlling weight to the Commissioner's non-examining consultants and to his own medical knowledge."  (Plaintiff's Brief ("Pl.'s Br.") at 15-21) (Dkt. No. 9).

2.    The ALJ's step three determination regarding mental health listed impairments was not supported by substantial evidence.  (Pl.'s Br. at 21-22).

3.    The ALJ erred by not finding plaintiff would be off task for at least 10% of the time, when the ALJ also found moderate limitations in the paragraph B functional areas.  (Pl.'s Br. at 22-23).

4.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to incorporate a restriction that plaintiff could not be exposed to any pulmonary irritants.  (Pl.'s Br. at 23-24).

Defendant contends that the Commissioner's determination should be affirmed because

it was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 2-14)

(Dkt. No. 10).  For the reasons stated below, this court agrees with the defendant and

finds the ALJ's decision was supported by substantial evidence.

## DISCUSSION

## VI.    LISTED IMPAIRMENT

### A.    Legal Standard

"Plaintiff has the burden of proof at step three to show that [his] impairments

meet or medically equal a Listing."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272

(N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y.

2006)).  "To meet a Listing, [p]laintiff must show that [his] medically determinable impairment satisfies all of the specified criteria in a Listing."  *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Additionally, a court may be able to uphold an ALJ's finding that a plaintiff does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence.  *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry*, 675 F.2d at 468).

## B.    Analysis

Plaintiff argues that he was "presumptively disabled" because his mental health conditions met or equaled Listings 12.04, 12.06, and 12.15.  (Pl.'s Br. at 21-22).  The ALJ found that plaintiff's severe mental impairments included attention deficit hyperactivity disorder, persistent depressive disorder, social anxiety disorder, and posttraumatic stress disorder ("PTSD").  (T. 12).  However, the ALJ concluded that because plaintiff did not meet the requirements of paragraphs B or C of the mental health listings, his impairments did not meet the listings criteria.  (T. 14-15).  For the following reasons, the court concludes that the ALJ's listing determination at step three was supported by substantial evidence.

The ALJ specifically addressed listings 12.04 and 12.06 in his step three analysis. To meet listing 12.04 (Depressive, Bipolar and Related Disorders), a plaintiff must establish the criteria of paragraphs A and B or the criteria of paragraphs A and C.  20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04.  The paragraph A criteria requires

medical documentation of either a depressive disorder or bipolar disorder, while paragraph B requires extreme limitation of one area or a marked limitation of two areas of mental functioning, which include (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself.  *Id.*  Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *Id.*

A plaintiff's burden for meeting listing 12.06 (Anxiety and Obsessive Compulsive Disorders) is similar, requiring the claimant to establish the criteria of paragraphs A and B or the criteria of paragraphs A and C.  20 C.F.R. § 404, Subpart P, App. 1, Listing 12.06.  Paragraph A entails medical documentation of an anxiety disorder; panic disorder or agoraphobia; or obsessive-compulsive disorder.  *Id*.  Paragraph B again requires an extreme limitation of one area or a marked limitation of two areas of mental functioning.  *Id*.  The "serious and persistent" criteria for paragraph C are also identical to those under listing 12.04.  *Id*.

In his decision, the ALJ explicitly discussed each of the paragraph B criteria, and cited evidence in the record supporting each consideration.  (T. 12-21).  In particular, the ALJ relied on a report from a consultative examiner who examined plaintiff and discussed plaintiff's activities of daily living.  (T. 13 (citing T. 428-32)).  He also

9

considered the findings from two state agency consultants who reviewed plaintiff's then-existing medical records.  (T. 13 (citing T. 70-71, 85-86, 538-39, 589-91)).

Ultimately, the ALJ found that plaintiff has no more than moderate limitations in understanding, remembering or applying information; in interacting with others; in adapting and managing oneself, and concentrating, persisting or maintaining pace.  (T. 13-14).  In support of these findings, the ALJ noted consultative examiner Dr. Hartman's opinion that plaintiff's attention, concentration, and memory were only mildly impaired.  (T. 13).  The ALJ also noted Dr. Hartman's observation that plaintiff was "cooperative, but quite anxious" upon examination, and that his speech was clear and fluent.  (*Id.*).  The ALJ further noted Dr. Hartman's observation that plaintiff was well groomed and "reported that he can dress, bathe, and groom himself, cook, clean, and manage his money."  (T. 14 (citing 428-32)).  The ALJ considered that plaintiff had no close friends other than his girlfriend and immediate family when determining he would have moderate difficulties in interacting with others.  (T. 13).  The ALJ therefore concluded that plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, and that the paragraph B criteria of Listings 12.04 and 12.06 were not satisfied.  (T. 14-15).  The ALJ also reasonably concluded that the evidence failed to establish the presence of paragraph C criteria, based on the record evidence.  (*Id.*).

To the extent plaintiff argues that other opinions in the record might have supported a finding of disability, the ALJ adequately explained why he rejected those opinions, as further discussed below.  Accordingly, the ALJ was not required to adopt their restrictive limitations in his listing analysis.  *See, e.g., Daniel E. v. Kijakazi*, No.

6:20-CV-1270 (DEP), 2022 WL 602533, at *8 (N.D.N.Y. Mar. 1, 2022) ("[T]he mere fact that Dr. Stang opined that plaintiff meets the criteria of the mental Listings does not obligate an ALJ to find that the plaintiff meets a Listing.  The ALJ both provided a detailed explanation regarding why he found plaintiff did not meet or equal a mental listing and appropriately explained his reasons for not relying on Dr. Stang's opinion in general.").

Plaintiff argues that a finding of disability was also appropriate because the record establishes that he met or equaled the criteria of listing 12.15 (Trauma-and Stressor-Related Disorders).  The ALJ did not explicitly consider listing 12.15 in his decision; however, any error the ALJ committed by not explicitly discussing listing 12.15 is harmless.  This listing has the exact same paragraph B requirements as listings 12.04 and 12.06.  *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.15(B).  Thus, because the ALJ clearly found that plaintiff's mental impairments did not meet the criteria for listings 12.04 and 12.06, he implicitly determined that plaintiff's impairments did not meet the criteria for listing 12.15.  *See, e.g.*, *Cote v. Berryhill*, No. 3:17-CV-1843, 2018 WL 4092068, at *12-13 (D. Conn. Aug. 28, 2018) ("Each of the listings that were considered by the ALJ (Listings 12.02 and 12.06) has the same paragraph B criteria as the listings plaintiff argues should have been considered (Listings 12.08 and 12.10)[;] . . . [a]s a result, the ALJ did not err in failing to explicitly consider Listings 12.08 and 12.10[;] [t]he ALJ assessed the paragraph B criteria for Listings 12.02 and 12.06, which are the same for Listings 12.08 and 12.10, and the ALJ's assessment of that criteria is supported by substantial evidence."); *Sweet v. Comm'r of Soc. Sec.*, No. 6:15-CV-0156 (GTS/WBC),

11

2016 WL 11478205 at *3 (N.D.N.Y. July 6, 2016) ("Any error the ALJ may have made in failing to specifically discuss Listing 12.04 was harmless because the criteria outlined in 12.04(B) is identical to the paragraph (B) criteria of Listing 12.02 and 12.04 and the criteria in 12.04(C) is identical to the (C) criteria of 12.02(C)[;] [t]herefore, because the ALJ's determination that the record did not support a finding that [p]laintiff met the paragraph (B) and (C) criteria of Listings 12.02 and 12.06, the same reasoning, when applied to Listing 12.04, would reach the result that [p]laintiff did not meet Listing 12.04"); *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242 at *5-6 (D. Vt. Feb. 17, 2016) ("Because the ALJ assessed the paragraph B criteria for Listing 12.04, and that criteria is the same for Listing 12.08, and because the ALJ's assessment of that criteria is supported by substantial evidence, the ALJ did not err in failing to explicitly consider Listing 12.08 at step three").

For the reasons stated above, the court finds that the ALJ properly considered plaintiff's impairments in conjunction with the Listings and reasonably concluded that his impairments did not meet or medically equal a listing singly or in combination. Remand is not required based on the ALJ's step-three findings because they are supported by substantial evidence.

## VII.   RFC/EVALUATING MEDICAL EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular

12

and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD),

13

2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency

14

factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.    Summary of Medical Opinion Evidence

In this case, the ALJ considered both treating source and consulting opinions related to plaintiff's mental limitations.  Plaintiff has challenged the ALJ's evaluation of these opinions.  A summary of the relevant opinion evidence and the ALJ's findings are set out below.

### 1.    Dr. Hartman

Dr. Hartman performed a consultative psychiatric evaluation of plaintiff on May 31, 2019.  (T. 428).  Upon examination, he observed plaintiff's posture and motor behavior was normal and his eye contact was appropriate.  (T. 430).  He observed plaintiff's attention and concentration "appeared to be mildly impaired[,]" his judgment was fair to poor, and his insight was poor.  (T. 430).  He also observed "[plaintiff] could do the counting without difficulty, but he made errors in the calculations and serial 7s." (T. 430).  Based upon his psychiatric evaluation, Dr. Hartman opined that plaintiff is

> able to understand, remember, or apply simple directions and instructions.  He is able to maintain personal hygiene and maintain awareness of hazards.  He has moderate difficulties using reason and judgment.  He has moderate difficulty sustaining an ordinary routine.  He has marked difficult interacting adequately with others.  He has marked difficulty sustaining concentration. He has marked difficulty regulating his emotions and marked to extreme difficulty understanding, remembering, and applying complex directions.

(T. 431).  The ALJ found this opinion to be "unpersuasive because his clinical observations do not support a finding of marked or extreme limitations."  (T. 19).  The ALJ also found the opinion unpersuasive because the medical evidence since the protective filing date was "not consistent with the limitations that Dr. Hartman assessed."  (T. 19).

### 2.    S. Hennessey, PhD

Dr. Hennessey is a DDS consultant who reviewed plaintiff's file on July 23, 2019.  (T. 74-77).  Dr. Hennessey opined that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but had no limitations with respect to understanding, remembering, and carrying out short and

16

simple instructions. (T. 74). He also opined plaintiff would be moderately limited in his ability to interact with the general public and to "complete a normal workday and workweek without interruptions . . . [and] to perform at a consistent pace without an unreasonable number and length of rest periods." (T. 75). However, he also stated that the opinion of the consultative examiner (Dr. Hartman) that plaintiff had marked difficulties in social interaction and sustained concentration was "considered and evaluated as not persuasive, because the [plaintiff] was noted to display only mildly impaired attention/concentration during the assessment, with fluent speech and appropriate eye contact." (T. 77). Dr. Hennessey opined plaintiff was moderately limited in his "ability to respond appropriately to changes in the work setting" and "to set realistic goals or make plans independently of others." (T. 75). The ALJ found Dr. Hennessey's opinion "generally persuasive because his findings are largely consistent with the medical evidence concerning [plaintiff's] mental health issues." (T. 20).

### 3.    M. Marks, PhD

Dr. Marks is a disability determination services ("DDS") consultant who reviewed plaintiff's file on January 28, 2020. (T. 89-93). Based on his review, Dr. Marks opined that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but had no limitations in following short and simple instructions. (T. 89-90). He also opined plaintiff would be moderately limited in his ability to interact with the general public and to "complete a normal workday and workweek without interruptions . . . [and] to perform at a consistent pace without an unreasonable number and length of rest periods." (T. 90). However, he also

opined plaintiff would still "be able to maintain adequate attention and concentration to perform simple work routines." (T. 92). He opined plaintiff was moderately limited in his "ability to respond appropriately to changes in the work setting" and "to set realistic goals or make plans independently of others." (T. 91). The ALJ found Dr. Marks' opinion "generally persuasive because his findings are largely consistent with the medical evidence concerning [plaintiff's] mental health issues." (T. 20).

### 4.    NPP Jennifer Kanaly

NPP Kanaly is a psychiatric nurse practitioner who has treated plaintiff since March 6, 2019. (T. 551; Pl.'s Br. at 2 n.1). NPP Kanaly opined, on September 22, 2020, plaintiff would be unable to meet competitive standards or has no useful abilities to function with respect to nearly all mental abilities and aptitudes. (T. 634-35). She stated that plaintiff would be extremely limited in his ability to understand information, remember information, apply information, interact with others, concentrate, persist, maintain pace, adapt in the workplace, and manage himself in the workplace. (T. 636). She also opined plaintiff would be off task for at least twenty-five percent of the day and would be absent from work thirty days per month. (T. 637). The ALJ found NPP Kanaly's opinion "wholly unpersuasive because her findings are not remotely consistent with [plaintiff's] mental health treatment records, which show that [plaintiff's] condition significantly improved with continued therapy and medication management." (T. 20).

### C.    Analysis

### 1.    Evaluation of Medical Evidence

Plaintiff argues the ALJ erred by giving "controlling weight" to the Commissioner's non-examining consultants and to his own medical knowledge. (Pl.'s Br. at 15-21). He specifically argues that the ALJ failed to properly evaluate the medical opinions of Dr. Marks, Dr. Hennessey, Dr. Hartman, and NPP Kanaly. (*Id.*). At the outset, the court notes that the ALJ did not give "controlling weight" to consultative examiners Drs. Marks and Hennessey, as the prevailing regulations no longer require an ALJ to weigh the various medical opinions. The ALJ did, however, find the opinions of both Drs. Marks and Hennessey generally persuasive. (T. 20).

The ALJ's decision in this case reflects his consideration of the relevant regulatory factors in weighing the state agency consultants' medical opinions. (T. 19-20). For example, with respect to supportability, the ALJ properly noted that Drs. Marks and Hennessey "based their findings purely on a review of [plaintiff's] file." (T. 20). Moreover, each of these sources provided a detailed, multi-page explanation in conjunction with their opinions, in which they cited to objective evidence throughout the record. (T. 76-77, 91-93). The ALJ also considered the consistency factor with respect to their opinions, noting that Drs. Marks and Hennessey's findings were "largely consistent with the medical evidence concerning [plaintiff's] mental health issues." (T. 20).

The ALJ also adequately considered the regulatory factors with respect to Dr. Hartman's opinion. With respect to supportability, the ALJ found the consultative examiner's opinion "unpersuasive because his clinical observations do not support a finding of marked or extreme limitations[.]" (T. 19). To this end, Dr. Hartman observed that plaintiff only "appeared to be mildly impaired" in attention and

19

concentration, but ultimately opined plaintiff would have "marked difficulty sustaining concentration" and "rule[d] out attention deficit hyperactivity disorder." (T. 430-31). Dr. Hartman also observed that plaintiff had "coherent and goal directed" thought process and "fair to poor" judgment but then opined plaintiff would have "moderate difficulties using reason and judgment." (T. 430-31).

With respect to consistency, the ALJ determined that "the medical evidence since the protective filing date of March 29, 2019 is not consistent with the limitations assessed" by Dr. Hartman. (T. 19). Specifically, the ALJ noted that despite Dr. Hartman's restrictive opinions, plaintiff's "mental health treatment records since [the consultative examination] show that [plaintiff's] condition significantly improved with therapy and psychotropic medications." (T. 19). Dr. Hartman examined plaintiff on May 31, 2019, and plaintiff's mental health treatment records extend until September 15, 2020. (T. 428, 670). The ALJ summarized and explicitly considered plaintiff's mental health treatment records from March 28, 2019, through May 5, 2020. (T. 16-19). During that period, plaintiff generally reported that he was "doing good" or improving. (*Id.*). On August 19, 2020, plaintiff stated he was "starting to feel a little better" and "doing ok." (T. 653). Arguably, plaintiff's mental health started to downtrend within a few months prior to the ALJ issuing his disability determination hearing. On August 31, 2020, he stated there was minimal improvement, he was anxious, and described irritability. (T. 659). On September 15, 2020, plaintiff stated he was not "feeling the greatest. [He was] angry and irritable" and his symptoms were getting worse. (T. 665).

Furthermore, the ALJ's analysis of NPP Kanaly's opinion was not so deficient as to warrant remand.  Admittedly, the ALJ considered the consistency of NPP Kanaly's opinion with the record as a whole; however, he did not address the supportability factor as it related to her opinion.  The ALJ found NPP Kanaly's opinion "wholly unpersuasive because her findings are not remotely consistent with [plaintiff's] mental health treatment records, which show that [plaintiff's] condition significantly improved with continued therapy and medication management."  (T. 20).  The ALJ further noted plaintiff's "condition significantly improved with continued therapy and medication management."  (T. 20).

The ALJ's failure to explain how he considered the supportability of the NPP Kanaly's opinion was procedural error.  Nevertheless, the ALJ's decision could still be affirmed if "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.'"  *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citations omitted).  Here, the court finds the substance of the regulation was not traversed because NPP Kanaly did not support the restrictive limitations she assessed with any explanation or citation to objective evidence in the record.  In particular, NPP Kanaly did not explain what findings supported her rather extreme opinion that plaintiff would miss thirty days per month of work, or her determination that plaintiff would be off task for at least twenty-five percent of the day.  (T. 637).  She also failed to explain which impairments would cause plaintiff's absences and off task behavior.  (*Id.*).  NPP Kanaly rated all of the categories of mental abilities to do unskilled work as "unable to meet competitive standards" or "no useful ability to

function" without explaining what findings or impairments supported her determinations.  (T. 634).

Plaintiff further argues the ALJ erred by not considering the other factors for evaluating medical opinions, under 20 C.F.R. § 404.1520I, including relationship with the plaintiff and specialization.  The ALJ was not required to explain how he considered these factors, however, because an ALJ's duty to articulate consideration of them is triggered when he or she "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same[.]"  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). In this case, there were no two opinions that triggered this requirement.  In any event, the court is still able to ascertain the ALJ considered these factors.  With respect to Drs. Marks and Hennessey, the ALJ noted that they were DDS consultants who only reviewed plaintiff's file.  (T. 20).  With respect to Dr. Hartman, the ALJ noted that Dr. Hartman was a consultative examiner who conducted a psychiatric evaluation of plaintiff.  (T. 19).  With respect to NPP Kanaly, the ALJ explicitly acknowledged NPP Kanaly's treating relationship with the plaintiff and also noted she was an NPP.  (T. 16, 20).  Therefore, it is clear the ALJ considered the relationship with the plaintiff and specialization when evaluating the medical opinions.

Plaintiff also argues that the "ALJ cherry picked the notes that [plaintiff's] limitations were improving with treatment and medication."  (Pl.'s Br. at 20).  Plaintiff argues the "notes show that NPP Kanaly was regularly adjusting his medications and that he was having side effects from his medications."  (*Id.*).  First, the ALJ explicitly

noted when the medication was increased, decreased, or changed in his summary of the appointments.  (T. 16-19).  Second, an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  Therefore, the ALJ was not required to explicitly analyze plaintiff's side effects to his medications.

Here, the ALJ did not pick out a few isolated instances of improvement but pointed to the results of almost every relevant mental examination status, which were largely normal.  (T. 16 (citing T. 392-94, 396-98, 569-71, 577-580, 582-588, 608-11, 617-19, 621-23, 625-27, 629-31)).  Additionally, the ALJ specifically analyzed the most egregious treatment record, occurring on July 25, 2019, in his decision.  (T. 17). However, the majority of the notes not analyzed by the ALJ were similar in nature to the notes analyzed in the decision.  (T. 565, 573-75, 605-07, 653-664).  There were only two notes not explicitly analyzed by the ALJ where plaintiff's mental health appeared to deteriorate.  The December 4, 2019 note where plaintiff had a setback does not rise to the level of cherry-picking because the setback was quickly followed by a positive treatment after plaintiff requested an increase in medication.  (T. 612-15, 617-19).  On August 4, 2020, plaintiff stopped taking his medication and "fe[lt] more aggravated now" and "worse."  (T. 641).  On August 12, 2020, after resuming medication, plaintiff stated there was minimal improvement again.  (T. 647-51).

Additionally, the court does not find the ALJ rejected medical opinions in favor of his own judgment.  (Pl.'s Br. at 20).  The ALJ properly relied on the state agency

consultants' opinions along with plaintiff's objective medical evidence to support his RFC finding.  When the stage agency consultants, NPP Kanaly, and Dr. Hartman reached differing conclusions, this created a conflict in the record.  "Because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent."  *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

Although "the opinion of a non-examining state agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider," *Vecchitto v. Saul*, No. 3:19-CV-726, 2020 WL 4696791, at *6 (D. Conn. Aug. 13, 2020), courts have repeatedly held that "an ALJ is entitled to rely upon the opinions of both examining *and* non-examining State Agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Christina K. v. Comm'r of Soc. Sec.*, No. 20-CV-1244, 2022 WL 409576, at *4 (W.D.N.Y. Feb. 10, 2022) (emphasis added).  In this case, the ALJ's written decision "makes it clear that he considered [Drs. Marks and Hennessey's] opinions as just one part of a larger analysis of plaintiff's treatment." *Johnathan M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-1076, 2022 WL 18831465, at *6 (N.D.N.Y. Nov. 9, 2022).  For example, the ALJ did not discount NPP Kanaly and/or Dr. Hartman's findings wholly on the basis of these opinions, but looked to their consistency with the record as a whole and the degree of support provided for their opinions.  Moreover, Dr. Marks analyzed

24

plaintiff's record on reconsideration in early 2020 and had access, not only to Dr.

Hartman's report, but also to more recent medical records, including those of NPP

Kanaly.  *See id.* (distinguishing plaintiff's disability case from those cases in which "the

ALJ tries to rely too heavily on the opinion of a non-examining State Agency consultant

who reviewed the file early in the disability development process[,]" and rendered their

opinion prior to that of the consultative examiner).  Accordingly, the ALJ's assessment

of the medical evidence of record is not a basis for remand in this instance.

## 2.    RFC Mental Limitations

Plaintiff also argues that the ALJ erred by not incorporating all of plaintiff's

mental limitations in the RFC.  (Pl.'s Br. at 22).  However, plaintiff does not identify

any specific limitations that the ALJ failed to include.  (*Id.*).  The ALJ restricted

plaintiff to only "perform[ing] unskilled, low stress occupations . . . consisting of

simple, routine tasks and entailing no more basic work-related decisions."  (T. 15).

This demonstrates that the ALJ considered plaintiff's moderate difficulties in

understanding, remembering, or applying information when determining his RFC.  (T.

13).  The ALJ also limited plaintiff to only occasional interactions with

supervisors/coworkers and no interaction with the public.  (T. 15).  This demonstrates

the ALJ considered plaintiff's moderate difficulties in interacting with others.  (T. 13).

Finally, the ALJ restricted plaintiff to only rare changes in the workplace setting.  (T.

15).  This demonstrates the ALJ considered plaintiff's moderate difficulties in adapting

or managing oneself.  (T. 14).

To the extent that the ALJ did not include any limitations regarding

concentrating, persisting, or maintaining pace in plaintiff's RFC, the ALJ did note that

NPP Kanaly observed plaintiff had a normal attention span on multiple occasions and was attentive during some sessions. (T. 16-19). Additionally, the ALJ noted that NPP Kanaly detected no signs of attentional or hyperactive difficulties in one of their sessions. (T. 18). It is clear based on these observations that the ALJ considered plaintiff's moderate difficulties in concentrating, persisting, or maintaining pace when determining plaintiff's RFC. (T. 14).

Moreover, even assuming that the ALJ should have adopted some of Dr. Hartman's marked limitations, "courts within the Second Circuit have repeatedly held that marked limitations in mental functioning, including a marked limitation in the ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements." *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020) (cleaned up). Here, the ALJ specifically tailored the RFC in consideration of plaintiff's mental limitations. Plaintiff has failed to satisfy his burden of introducing evidence demonstrating that he was otherwise unable to perform work commensurate with the ALJ's RFC finding. *See Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."). Accordingly, the court

26

does not find any error in the ALJ's incorporation of plaintiff's mental limitations in his RFC.

### 3.    Off Task Behavior

Plaintiff argues the ALJ erred by not finding plaintiff would be off task more than ten percent of the workday, when the ALJ also found plaintiff would have moderate limitations in all paragraph B criteria areas.  (Pl.'s Br. at 22-23).  NPP Kanaly opined that plaintiff would be off task more than twenty-five percent of the day and would need to be absent from work thirty days per month because of his impairments.  (T. 637).  However, the ALJ also noted that NPP Kanaly found plaintiff had a normal attention span in multiple appointments and did not always exhibit ADHD.  (T. 18-19).  For the reasons discussed above, plaintiff properly found NPP Kanaly's opinion wholly unpersuasive.  In particular, NPP Kanaly's opinion that plaintiff's impairments would virtually prevent him from attending work at all in a given month is belied by her own treatment notes.

The ALJ also noted Dr. Hartman determined plaintiff's attention, concentration, and memory were only mildly impaired.  (T. 16).

> A mere finding of a "moderate" limitation, without other evidence in the record to support a need to be off task as a result of an individual's mental impairment, need not be interpreted as denoting disabling impairment of functioning.  Rather, as has been noted many times in this district, a moderate limitation is not inconsistent with the ability to perform unskilled work.  *See Katherine Marie S. v. Comm'r of Soc. Sec.*, [No.] 18-CV-0233, 2019 WL 1427456, at *9 (N.D.N.Y. Mar. 29, 2019) (Dancks, M.J.) (stating that "courts within the Second Circuit have routinely held that individuals suffering from 'moderate' difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform 'simple, routine and repetitive tasks'") (internal alterations omitted)

*Maria A. R. v. Kijakazi*, No. 6:21-CV-0290 (DEP), 2022 WL 2954376, at *10 (N.D.N.Y July 26, 2022) (finding no error where the ALJ did not find an off task limitation, when there was only one source who opined a need for plaintiff to be off task and substantial evidence supported the exclusion of an off task limitation).

Plaintiff cites *Jennifer E. v. Commissioner*, where this court found the ALJ substituted his lay opinion for that of the treating provider. (Pl.'s Br. at 22-23). However, *Jennifer E.* was decided under the treating physician rule where treating providers were given controlling weight "so long as [their opinion was] 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Jennifer E. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0321 (ATB), 2020 WL 2059823, at *4 (N.D.N.Y Apr. 29, 2020) (citing *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)); *Sue-Anne O. M. v. Saul*, No. 3:20-CV-00301, 2021 WL 6551096, at *9 n.14 (D. Conn. Sept. 22, 2021) ("These cases . . . refer to the weighing of evidence, a requirement under the old regulations, and are not persuasive under the new regulations, which no longer require the weighing of evidence"). Moreover, in *Jennifer E.*, there were multiple opinions finding plaintiff would be off task more than thirty percent of the week. *Jennifer E.*, 2020 WL 2059823, at *10. Here, NPP Kanaly is the only opinion in the record finding plaintiff would be off task, and the degree to which she opined that plaintiff would be off task and/or absent does not find adequate support in the record. (T. 637). Thus, this court finds the ALJ did not err by not including an off-task limitation.

####       4.       **Pulmonary Irritants**

Plaintiff finally argues that the ALJ erred by limiting plaintiff to avoid

concentrated exposure to pulmonary irritants instead of avoiding all exposure to

pulmonary irritants.  (Pl.'s Br. at 23-24).  The ALJ found the severity of plaintiff's

chronic obstructive pulmonary disease did not meet the listing for a chronic respiratory

disorder because plaintiff did "not have a FVC of 1.75 or less or a FEV of 1.4 or less."

(T. 12).  The ALJ noted plaintiff's pulmonary function test on May 31, 2019, showed

plaintiff had a FVC of 3.26 and a FEV of 1.63.  (T. 12).  Consultative examiner Dr.

Wassef opined plaintiff "should not be exposed to extremes in temperature, secondhand

smoke, perfumes, chemicals, or any type of respiratory irritants."[1]  (T. 437).  The RFC

included the limitation, plaintiff "must avoid concentrated exposure to dust, fumes,

gases, and other pulmonary irritants."  (T. 15).

Plaintiff cites *Cassandra H. v. Comm'r. of Soc. Sec.*, No. 8:19-CV-226 (ATB),

2020 WL 1169404, at *1 (N.D.N.Y Mar. 10, 2020) to support his argument.  (Pl.'s Br.

at 23).  In *Cassandra H.*, this court did not decide whether the ALJ erred by only

limiting plaintiff to concentrated exposure as opposed to any exposure.  *Cassandra H.*,

2020 WL 1169404, at *15.  Instead, the court held "even if the ALJ erred in

determining that plaintiff should avoid only 'concentrated' exposure, all but one of the

jobs listed by the VE did not involve any exposure to pulmonary irritants [and]. . . [a]ny

error would have been harmless."  *Cassandra H.*, 2020 WL 1169404, at *15.  Similarly,

in this case, the jobs cited by the VE do not expose workers to pulmonary irritants.  *See*

---

[1] The ALJ incorrectly noted that "Dr. Wassef assessed that [plaintiff] should not be exposed to
temperature extremes, secondhand smoke, perfumes, chemicals, or any type of respiratory
irritants."  (T. 19).

DICOT 729.687-010 Assembler, Electrical Accessories I, 1991 WL 679733; DICOT 922.687-086 Returned-goods Sorter, 1991 WL 688139; DICOT 559.687-074, Inspector and Hand Packager, 1991 WL 683797.  Thus, this court finds even if the ALJ erred, it was harmless error.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED,** and plaintiff's complaint its **DISMISSED**, and it is

**ORDERED**, that the Clerk enter **JUDGMENT FOR DEFENDANT.**


Dated: June 12, 2023

Andrew T. Baxter
U.S. Magistrate Judge